**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BENARD MCKINLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 04190 |
| | ) | |
| RICK HARRINGTON, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Benard McKinley, an inmate at the Menard Correctional Center in Illinois, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State of Illinois, through respondent Rick Harrington, maintains that all but one of McKinley's grounds for relief are (1) raised in an untimely manner; (2) procedurally defaulted; or (3) not cognizable as grounds for federal habeas relief. McKinley contends that any procedural default is excused by a showing of cause and prejudice. For the reasons set forth below, the Court denies the petition in full and declines to issue a certificate of appealability.

**I. BACKGROUND**

On June 24, 2001, 23-year-old Abdo Serna-Ibarra was gunned down on his way to play soccer at Kosciuszko Park ("Koz" Park) in Chicago. Sixteen-year-old Benard McKinley, the petitioner, and a co-defendant were charged with the murder. McKinley was convicted after a jury trial and sentenced to consecutive 50-year terms—one for the murder and one for the deadly use of a firearm. McKinley appealed unsuccessfully and received no relief from the Illinois courts on his original and successive post-conviction petitions. He now petitions this Court for a writ of habeas corpus, arguing that his conviction and sentence violate the federal Constitution.

## A.  Trial[1]

The victim, Serna-Ibarra, was shot shortly after he and three friends—Hugo Moreno, Ociel Espinosa, and Adrian Roman—purchased a soccer ball and were walking to Koz Park to play. On the way to the store, they had a brief confrontation with a young black man; when they left the store, they were confronted by the same young black man they had seen earlier, this time accompanied by a group of young men, all of whom were Hispanic. One of them, Edward Chavera—ultimately McKinley's codefendant—and Serna-Ibarra argued and got into a fistfight. After Chavera fell off of his bike, he pulled a gun from his waistband, handed it to the young black male who had previously confronted Serna-Ibarra and his friends and yelled "Shoot him, Shoot him," as Serna-Ibarra turned and fled. The friend shot Serna-Ibarra once in the back, and when the victim turned around and raised his hands, the shooter fired several more shots before running away. Benard McKinley was later identified as the shooter.

There was no physical evidence, such as the murder weapon, presented against McKinley at trial. The bulk of the evidence consisted of the testimony of the investigating police officers, forensic witnesses, and the four witnesses who identified McKinley as the shooter—the three friends of the victim present during the shooting and the confrontation that preceded it, and one resident of the neighborhood, Michael Thomas, who was familiar with McKinley and testified that he saw McKinley flee the scene with a revolver in his hand. The three friends testified that that they had picked McKinley out of a photo array; they and Thomas all picked McKinley from

---

[1] The facts of the shooting are derived from the recitation of facts by the Illinois Appellate Court in its unpublished decision on McKinley's direct appeal. State Court Record, Ex. A at 2-5. They are presumed to be correct unless contradicted by clear and convincing evidence. *Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013). To provide context for McKinley's current claims, other facts regarding what occurred at trial are taken from the trial record.

a live lineup the day after the shooting, and each of them also identified McKinley in court as the shooter. In his trial testimony, when asked if he had ever given the detective "a description of the shooter's hairstyle," Adrian Roman stated, through a Spanish language interpreter, that the shooter's hair "was longer than [McKinley's at] the time when we viewed the lineup." Ex. DD at W-89.

One of the witnesses called by McKinley was his aunt, Alisa[2] Martin, who testified that overnight on June 24, 2001, Chicago police officers barged into her home, where McKinley occasionally stayed, and "ransacked" it. She further testified that she was shown a photograph of someone who was not McKinley and whom she did not know, and that officers removed a photograph of McKinley from her apartment.

During deliberations, the jury sent a note to the judge that asked: "Honorable Judge Wadas: The jury would like to know the evidence leading to the arrest of Benard McKinley? If possible may we have a copy of the transcript?". The judge discussed this note with the prosecutor and McKinley's defense lawyer, Gregg Smith, in chambers. Both sides agreed that the answer to the "first question" should be "you have the evidence." Mr. Smith suggested that the same answer be given "as to both questions," after which the parties discussed the judge's discretion to allow the jury to view the trial transcript. The judge suggested asking: "What portion or portions of the transcript do you want?" After some further discussion about what testimony the jury might be referring to, the judge had McKinley brought into the courtroom and read the note again. He stated that his response to "question one" would be that the jury had all of the evidence on that issue and should continue to deliberate. Each side answer "No, Judge" when asked if there was an objection. The judge then said that he interpreted the second question

---

[2] The Court adopts the spelling of Ms. Martin's named used by Mr. McKinley.

"as a request for an entire transcript of the trial," which the judge said was "not feasible although available." The judge stated that he would ask the jury if they wanted specific portions of the transcript. He did not have further colloquy on the subject.

In reply to the judge's answer, the jury sent additional notes, asking to see the testimony of Ramon, Espinosa, and Moreno—the three friends of the victim present at the shooting. The prosecution did not object, but McKinley argued that the jury should be instructed simply to continue deliberating. The judge overruled the objection and sent the jury the requested transcripts; as to Espinosa and Moreno, who testified twice, he sent only their testimony during the state's case in chief, concluding that the testimony in the defense case was only about the identification of McKinley's co-defendant. In a later note, the jury asked for transcript of Michael Thomas's testimony; over the defendant's objection, the judge gave the jury that transcript, too.

The jury returned a guilty verdict on the first-degree murder charge and a specific factual finding that during the commission of the offense, McKinley personally discharged a firearm that proximately caused the victim's death. After denying McKinley's motion for a new trial, the judge imposed two consecutive 50-year prison sentences. *See* 730 ILCS 5/5-5-8(a)(1) (first degree murder penalties); *id.* § 5-8-1(a)(1)(d)(iii)(mandatory firearm enhancement).

**B.    Direct Appeal**

With the assistance of counsel, McKinley appealed his conviction and sentence. He challenged the trial court's handling of the jury's request for trial transcripts, the sufficiency of the witnesses' identification evidence, and the length of his sentence, particularly the judge's failure to give more mitigating weight to McKinley's age (16) at time of the crime. In a 20-page

written decision, the Appellate Court rejected McKinley's arguments and affirmed the conviction and sentence.

McKinley then filed a petition for leave to appeal (PLA) to the Illinois Supreme Court. He raised two issues: "Whether the trial judge abused his discretion by answering a proposed jury question and providing the jury with transcripts not relevant to the question posed by the jury" and "Whether the 100 year sentence imposed by the trial court is excessive and an abuse of discretion by the trial court." The Supreme Court denied the PLA in a summary order.

**C.      State Post-conviction Proceedings**

McKinley next filed a *pro se* petition for post-conviction relief. He raised at least 16 issues (with multiple sub-parts), including the state's withholding of exculpatory evidence[3] and his trial counsel's ineffective assistance on multiple fronts. The petition was summarily denied as frivolous and patently without merit under the Post-Conviction Hearing Act, *see* 725 ILCS 5/122-1. With the assistance of appointed counsel, McKinley appealed the denial of his post-conviction petition. His appeal raised only the issue of trial counsel's failure to introduce into evidence photographs of McKinley at his mother's wedding the day before the shooting, to impeach witnesses' testimony or statements during the investigation that McKinley's hair appeared shorter at the lineup than at the shooting.

The Appellate Court analyzed McKinley's argument under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). The Court first noted the discrepancy between the record and

---

[3] During the trial, a police officer's testimony confirmed that officers had shown a photograph of someone other than McKinley to McKinley's aunt Alisa Martin when the officers went looking for McKinley at her home. At the time the police believed the person in the photograph, a Hispanic male named Danny Lopez, to be a person of interest in the investigation. The photograph had not been produced to McKinley in pretrial discovery, and McKinley's trial counsel unsuccessfully moved for a mistrial on that basis. The photograph was not admitted as evidence at the trial.

McKinley's claim that all four eyewitnesses had stated at some time that he had cut his hair; as McKinley conceded in his reply brief, only two witnesses had made statements to that effect, and only one at trial (Romon). The court further noted that McKinley's photographs were "dark and grainy" and made it impossible to determine his hair length or style. The court also explained that any discrepancy in the witnesses' statements about McKinley's hair suggested by the photograph would not have created reasonable doubt regarding the identity of the shooter because four witnesses made "strong, positive identifications." The eyewitnesses "had ample opportunity to view defendant and focus their attention on him" during two confrontations, and therefore the use of the photograph would not have made his conviction less likely. The court therefore affirmed based on the absence of prejudice. Through counsel, McKinley filed a PLA that was summarily denied.

McKinley later went on to seek leave to file a successive petition for post-conviction relief, the litigation of which overlapped with these proceedings, precipitating a stay. The circuit court denied McKinley's request to file the successive petition, addressing his claims in a written opinion. McKinley appealed, and the appellate court affirmed, holding that McKinley had not demonstrated the requisite "cause and prejudice" to excuse the untimely assertion of his most recent claims. The subsequent PLA was summarily denied.

### D.     Federal Habeas Proceedings

McKinley first filed a § 2254 petition on June 9, 2011, in which he raised five grounds for relief, the fifth of which he acknowledged had not yet been presented to the highest state court because it remained the subject of the successive post-conviction petition, the denial of which he had appealed to the state appellate court and was still pending. Briefly summarized, the five grounds for relief were: (1) insufficiency of evidence—specifically, the vague and unreliable

eyewitness testimony at trial; (2) the trial court's "abuse of discretion" in responding to the jury's questions during deliberations; (3) excessive sentence; (4) ineffective assistance of trial counsel—specifically, the failure to present photographic evidence or cross-examination on the subject of petitioner's hair length at the time of the shooting; and (5) ineffective assistance of trial counsel—specifically, the failure to conduct adequate pre-trial investigation regarding the police search of the home of McKinley's aunt and move to suppress evidence illegally seized at that time.

The habeas proceedings were stayed pending the outcome of McKinley's successive petition for post-conviction relief. Order, Dkt. # 9 (Manning, J.). Despite the stay, McKinley filed a "First Amended Petition for Writ of Habeas Corpus" on November 17, 2011. It reprises the same five grounds for relief and adds a sixth: that the pre-trial photo array used to identify McKinley and the in-court testimony about it were impermissibly suggestive and indicative of "cross-racial misidentification." Finally, on April 18, 2013, McKinley filed a "Supplemental Petition for Writ of Habeas Corpus." This petition adds three new bases for the alleged ineffectiveness of trial counsel: (7) the failure to request a continuance of the trial to investigate exculpatory evidence improperly withheld by the prosecution; (8) the failure to call Officer Richard Hybl as a defense witness to contradict the testimony of others on the scene of the murder; and (9) the failure to allow petitioner to testify in his own defense despite petitioner's clearly expressed desire to testify.

Also on April 18, 2013, Petitioner moved to lift the stay, representing that he had exhausted all available appeals of the denial of his successive post-conviction petition in state court. This Court lifted the stay on May 3, 2013, and ordered the State to respond to the Amended and Supplemental petitions.

The State argues that all but one of McKinley's claims—that trial counsel was ineffective for failing to introduce into evidence the wedding photograph depicting McKinley's hair length—are procedurally defaulted or not cognizable as federal habeas claims. McKinley contends that his ineffective-assistance claims are all related and therefore none was defaulted, and further that the other defaults are excused. Finally, he contends that his trial counsel's failure to introduce the wedding photograph into evidence prejudiced his defense and was not a reasonable trial strategy.

In its briefing, the State refers to McKinley's claims by letter—A, B, C, D1, D2, D3, E, F1, F2, and F3, with the "D" and "F" claims all referring to various grounds for the ineffective-assistance claims that were raised in two waves. The State identifies one claim more than the Court, labeling as D1 and D3 two grounds for ineffective assistance that this Court previously described as one: McKinley's claim that counsel failed to introduce the wedding photograph showing McKinley's hair (D1) or cross-examine witness Michael Thomas about the length of McKinley's hair (D3). Because Mr. McKinley adopts the State's labels in his subsequent briefs, this Court will also use them in its opinion.

## II.     DISCUSSION

This Court can grant a state prisoner's petition for a writ of habeas corpus only on the ground that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order for a writ to issue, the petitioner must show that the state adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision by a state court is "contrary to"

clearly established federal law if it applies a rule different from that established by the Supreme Court, or reaches a different outcome than that of the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013). A state court engages in an "unreasonable application of" federal law if it identifies the correct legal standard articulated by the Supreme Court, but applies it in an unreasonable manner. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The decision must be "objectively unreasonable," and not simply incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Under the statute, courts must give "full effect" to state judgments that are consistent with federal law. *Williams*, 529 U.S. at 383. This means applying a deferential standard of review, under which state court rulings are given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Within the confines of this limited review, the Court must construe a *pro se* petition liberally. *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010).

### A. Procedural Default

Before bringing claims in a habeas petition, the petitioner must comply with the statutory exhaustion requirement by presenting each claim in one full round of review in the state courts. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding that "a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted his claims). The petitioner must not only present his arguments to the state courts but also alert them, at least in general terms, that there is a federal constitutional basis for the arguments. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Failure to exhaust available state remedies through at least one full round

of review results in procedural default and forecloses federal review of the claim. *O'Sullivan*, 526 U.S. at 848; *Mulero v. Thompson*, 668 F.3d 529, 535-36 (7th Cir. 2012); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

### 1.    *Defaulted Issues*

The State argues that McKinley procedurally defaulted a number of the claims raised in his petitions: A (insufficiency of the evidence due to unreliable eyewitness identifications); E (the suggestiveness of the pretrial array and lineup); and F1-F3 (ineffective assistance of counsel premised on the failure to seek a continuance to investigate *Brady* material, the failure to call Officer Hybl, and the failure to allow petitioner to testify in his own defense).

As to claims A and E, the Court agrees that McKinley did not subject these claims to a full round of review in state court. Claim A was raised on direct appeal only to the intermediate appellate court; it was omitted from the subsequent PLA. To the extent McKinley raised an insufficiency-of-the-evidence argument is his post-conviction petition that could be generously construed as related to Claim A, his appeal from the denial of post-conviction relief did not pursue that ground, nor did the PLA that followed. As to claim E, McKinley argued for the first time in his post-conviction petition that various identification procedures were unduly suggestive and unfair (because he was the only juvenile, not because of the cross-racial identification he challenges in Claim E, though), but he did not reprise the argument in the subsequent appeals.[4]

---

[4] McKinley asserted a claim on direct appeal that the identification evidence submitted at trial was too vague and uncertain to support conviction, but did not challenge the fairness of the identification procedures. He devotes substantial energy in his briefs in this Court defending the timeliness of his challenge to the integrity of the identification procedures, arguing that the claim "relates back" to his original appellate challenge to the sufficiency of the identification evidence, but even assuming that the claim "relates back" to the initial challenge, that does not cure the failure to appeal the post-conviction court's denial of the challenge to the identification procedures the police employed.

As to Claims F1, F2, and F3, the State contends that McKinley failed to exhaust in state court these specific grounds for his ineffective-assistance-of-trial-counsel claim.[5] Although a claim of ineffective assistance of counsel targets counsel's performance as a whole, the purpose of the procedural default rules "requires a party to present to the state court both facts and law on which he relies." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *see McNary v. Lemke*, 708 F.3d 905, 919 (7th Cir. 2013) ("This exhaustion requirement includes raising both the broad claim [and] also the specific arguments and 'operative facts' within that claim."). "Thus, the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens*, 489 F.3d at 894. Accordingly, it is appropriate for the State to argue that certain specific arguments about counsel's ineffectiveness have been defaulted.

Ground F1 posits that trial counsel's response to the late disclosure of evidence—the photograph of someone other than McKinley that police officers had shown to McKinley's aunt in the aftermath of the murder—was ineffective; although counsel objected and unsuccessfully moved for a mistrial,[6] McKinley contends that he should have obtained a continuance to enable

---

[5] The State further contends that claims F1-F3 are untimely because these grounds for ineffective assistance of counsel were raised for the first time outside the one-year statute of limitations (if, as the State assumes, the filing of the first and amended petitions did not toll the statute of limitations because the claims do not relate back). See 28 U.S.C. § 2244(d)(1), (statute of limitations); *id.* § 2244(d)(2) (tolling provision). Citing *Mayle v. Felix*, 545 U.S. 644 (2005), McKinley argues that his claims are not time-barred because his ineffective-assistance claims all arise from the same conduct, transaction, or occurrence set forth in the original pleading. *Id.* at 655; *see* Fed. R. Civ. P. 15(c)(2). In the habeas context, the criminal trial itself does not constitute a common occurrence; if the newly raised claim arises from facts that are "separated in time and type" from those underlying the original claims, they do not relate back. *Mayle*, 545 U.S. at 657, 660-61. The original and newly asserted claims must share a common core of operative facts. *See id.* at 658. The Court fortunately does not have to engage with the abstruse inquiry of whether the later-raised attorney trial errors are of the same "time and type" as those in the original petition, because even if they were timely raised, claims F1, F2, and F3 are all procedurally defaulted.

[6] The mistrial was denied upon the trial judge's conclusion that the late disclosure was not prejudicial because the photograph was not relevant to McKinley's defense, as it depicted a

11

him to investigate the photograph and use it to undermine the identifications of McKinley. Putting aside the fact that McKinley offers no persuasive theory about how a photo of an Hispanic male that police showed to his mother would have enabled his attorney to impeach the repeated identifications of McKinley by multiple witnesses, McKinley never made any form of this argument in state court until he requested permission to file a successive post-conviction petition, a request that was denied. It is therefore procedurally defaulted because it was not presented in a full round of state court review; moreover, as discussed below, the state courts also had an independent and adequate state-law ground for rejecting the argument, finding that it was untimely raised under state law.

Ground F2 relates to counsel's failure to interview and call Officer Richard Hybl as a defense witness. McKinley contends that Hybl, one of the first police officers at the murder scene, might have been able to contradict the testimony of two witnesses (Espinoza and Romon) regarding a language barrier they faced with the officers on the scene and their reliance on bystanders to translate their statements to police officers. (McKinley suggests that the Spanish-speaking officer on the scene spoke to the witnesses, leaving no excuse for any incompleteness or discrepancies in their testimony.) Although McKinley had argued generally on post-conviction review that the eyewitnesses had perjured themselves, he never raised as a ground for his ineffective-assistance claim the failure of counsel to call Officer Hybl to contradict them on the matter of whether any police officers spoke to the witnesses in Spanish in the immediate aftermath of the shooting. That claim is new in McKinley's supplemental (*i.e.*, third) federal habeas petition, and it is procedurally defaulted for that reason.

---

Hispanic male and was shown to witnesses in an attempt to locate McKinley's co-defendant, not McKinley.

Ground F3 relates to counsel's failure to call McKinley to testify in his own defense, to present testimony regarding an alleged alibi. McKinley made this argument in his initial post-conviction petition, but not in the appeal (for which he was represented) and PLA. The claim is defaulted because the state courts were not given the opportunity to address the argument through a full round of review.

The final procedural defaults that the State raises pertain to claims that McKinley was found to have waived in state court. When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment federal habeas review of the claim is foreclosed. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Claims that a state court refuses to address on the merits because they were not raised in accord with the state's procedural rules are, like claims that were not fairly present to the state courts, "procedurally defaulted." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010); *Woods*, 589 F.3d at 373.[7] Such claims are not, however, entirely foreclosed by the state's reliance on its own procedural rule; if a petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, he may be heard on habeas review. *Coleman*, 501 U.S. at 750.

---

[7] McKinley devotes a number of pages in his reply brief (Dkt. #31 at 39-43) to arguing that the procedures for review of pro se post-conviction petitions codified in the Illinois Post-Conviction Hearing Act were derived from federal law, most specifically 28 U.S.C. § 1915, and that therefore in applying those procedures, the post-conviction courts relied on federal law rather than an adequate and independent state law ground. This argument misconstrues the import of Illinois' adoption of its post-conviction procedures. The origin of the procedures enacted by the state does not matter; they are state law because the state enacted them, whether or not it invented them or borrowed them from another jurisdiction. In any event, the dismissal of McKinley's post-conviction claims was merely authorized by the state's post-conviction procedures because the court deemed them to be frivolous; the post-conviction statute was not the basis for that ruling, and as such did not itself provide the "independent and adequate" state law grounds for denying the post-conviction claims.

Procedural default may also be excused where failure to consider the federal claim will result in a fundamental miscarriage of justice. *Id*.

As the State correctly observes, the state courts deemed McKinley to have waived three of the claims he raises in his current habeas petition. First, the state court denied McKinley leave to file a successive post-conviction petition raising claims D2 and F1, which pertain to counsel's ineffectiveness in failing to investigate what McKinley argues was an illegal search of his aunt's home before his arrest, and failing to request a continuance of trial to investigate the purportedly exculpatory photograph shown to McKinley's aunt. The Illinois courts require a showing of cause and prejudice before they will allow a successive post-conviction petition, and here, the state court concluded that McKinley failed to make that showing. The denial of leave to file the successive petition was affirmed on appeal, and the subsequent PLA was denied. Therefore, there are independent and adequate state grounds for barring federal review of these two claims. *See Woods,* 589 F.3d at 376 (requirement that all available claims be raised in first post-conviction petition is a procedural rule under Illinois law); *Johnson v. Loftus*, 518 F.3d 453, 458 (7th Cir. 2008); *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) (explaining that "[u]nder Illinois law a prisoner is entitled to only one collateral attack unless that proceeding is so defective because of judicial shortcomings that justice requires a second opportunity.").

The state contends that another "independent and adequate" ruling occurred when the state appellate court deemed claim D3—that counsel failed to question witness Michael Thomas about the length of the shooter's hair—waived because it was raised on post-conviction appeal without having been presented in the post-conviction petition. McKinley urges the court to ignore the waiver because the state court should have construed his *pro se* petition liberally, but that argument was rejected when presented in the subsequent PLA, and this Court will not

14

reopen an issue that the state courts declined to address on the merits. *See Woods*, 589 F.3d at 376; *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997) ("If a claim is found to be waived by an Illinois appellate court, that constitutes an independent and adequate state ground and we will not entertain that claim."). The state appellate court would not reach the merits of the issue because of the state's procedural rule that arguments cannot be presented for the first time on appeal. That is independent and adequate ground, and therefore, the claim is procedurally defaulted. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) (application of waiver doctrine is "independent and adequate" state ground).

2.      *Excuses for Default*

Procedural default can be excused only when the petitioner establishes cause and prejudice or by showing that failure to consider the claim(s) will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750; *McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010). To demonstrate cause, McKinley must show that some external impediment, such as the unavailability of the factual or legal basis for a claim, prevented him from raising the claims properly. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). To establish prejudice, the petitioner must prove that any errors worked to his "'actual and substantial disadvantage.'" *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Alternatively, a petitioner seeking to excuse procedural default based upon a fundamental miscarriage of justice must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 319–322 (1995). McKinley argues both cause-and-prejudice and actual innocence.

## a. Defaulted Ineffective-Assistance Claims

McKinley's first cause-and-prejudice argument is directed at preserving the defaulted ineffective-assistance trial counsel claims under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Court held that where state law requires that ineffective-assistance-of-trial-counsel claims must be raised in an initial post-conviction proceeding, a procedural default at that stage will not bar a federal habeas court from hearing those claims if there was no counsel or counsel in that proceeding was ineffective. *Id.* at 1320. McKinley claims that the exception provides "cause" for his procedural default and allows this Court to reach the merits.

The State contends that the *Martinez* exception to the procedural default of ineffective-assistance claims is not applicable at all in Illinois, which permits ineffective-assistance claims to be raised on direct appeal—when appointed counsel is available—to the extent they are clear from the trial record. However, the Supreme Court's even-more-recent decision in *Trevino v. Thahler* cautions against such a mechanical view of *Martinez; in Trevino*, the Court extended the *Martinez* exception to states where there was no "meaningful" opportunity to raise ineffective-assistance arguments on direct appeal. *Trevino v. Thaler*, 133 S. Ct. 1911 (U.S. 2013). According to the Court, a system in which a direct appeal does not allow a new lawyer, the expansion of the trial court record, and sufficient time to develop the claim, is functionally no different than a system in which it is not permitted to raise ineffective-assistance claims on direct appeal. *See id.* at 1921 (explaining that "a distinction between (1) a State that denies permission to raise the claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference.").

Therefore, the *Martinez* exception is at least theoretically available to McKinley, who had no right to counsel for his initial post-conviction filing, if he could show that there was no "meaningful opportunity" before that point to raise his claims that his trial counsel provided ineffective assistance. The Court parts ways with the State to the extent it contends that the theoretical possibility of raising an ineffective-assistance claim on direct appeal wholly insulates the State of Illinois from *Martinez*'s reach. The State has not established that its system categorically meets the more functional approach of *Trevino*. Here, for example, McKinley's trial counsel was on the brief in his direct appeal, a factor that *Trevino* suggests is not indicative of a meaningful opportunity to challenge trial counsel's performance at that stage.

Still, the *Martinez* exception is narrowly drawn and only excuses defaults of ineffective assistance claims that were caused by absent or deficient counsel at the initial post-conviction stage. *Martinez*, 132 S. Ct. at 1320. Thus, the excuse could apply only to claims that McKinley lacked a meaningful opportunity to raise on direct appeal and then failed to raise in his initial *pro se* post-conviction petition. Therefore, this would not include claims that were defaulted because they were decided on independent and adequate state grounds other than McKinley's failure to include them in his original post-conviction petition (D2, D3, F1); since those claims were not defaulted simply by the failure to raise them in the initial post-conviction petition and cannot be rescued by *Martinez*. Nor can claim F3, the claim that counsel prevented McKinley from testifying. McKinley did raise this claim in his *pro se* post-conviction petition, so the *Martinez* exception is inapplicable. It is only claim F2 as to which McKinley could argue that his default was caused by his failure to raise the claim at the post-conviction stage, when he did not have counsel to assist him. He raises that claim for the very first time in his supplemental habeas petition in this Court.

As to claim F2—counsel's failure to question Officer Hybl about the presence of a Spanish-speaking police officer at the scene of the shooting—the State posits the claim is not "substantial" and therefore the default cannot be excused under *Martinez*. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318-1319. The Court agrees that McKinley's ineffective assistance claim is far too weak to excuse the default. McKinley's argument arises from the testimony of Moreno, one of the three witnesses to the shooting, who testified that he spoke to a Spanish-speaking police officer who responded to the scene after the shooting. On the basis of this testimony—from a witness who identified him as the shooter—McKinley posits that the testimony of two other eyewitnesses (Espinoza and Romon) that they relied on bystanders to translate their initial description of the shooter to police was a lie, and that in fact they gave descriptions to a Spanish-speaking police officer. If Officer Hybl, an early arrival at the scene, could confirm this, McKinley posits that the witnesses' credibility would have been nullified, and further that there would be no excuse for failing to give certain details about the appearance of the shooter. McKinley overestimates the probative force of this line of impeachment, but it suffers from a more glaring defect: it rests on pure speculation—the unsupported supposition that Officer Hybl would have testified that some other police officer spoke to eyewitnesses in Spanish at the scene of the shooting. McKinley has not provided any basis for his belief that this would be Hybl's testimony.

It is far from a "substantial" claim that McKinley's trial counsel's failure to pursue this line of questioning with Officer Hybl amounts to a constitutionally significant error that prejudiced McKinley. The Court can ascertain no "substantial" argument for either deficient

performance or prejudice within the meaning of *Strickland*. *See* 466 U.S. at 687. First, counsel did attack the eyewitnesses' credibility based upon inconsistencies and vagaries in their descriptions of the shooters and that was a transparently sound trial strategy. Counsel also highlighted the fact that one witness (Moreno) said he spoke in Spanish to a police officer while two others said they relied on bystanders; the jury therefore heard that possible discrepancy.[8] The Court does not find it a "substantial" argument that counsel's strategy should have included trying to impeach the eyewitnesses' testimony through Officer Hybl—other than his early presence on the scene, McKinley has no basis for his speculation that Hybl would have confirmed Moreno's testimony rather than the other witnesses' on the subject of who spoke in Spanish to whom. Moreover, there can be no "substantial" argument that the failure to pursue this line of questioning was prejudicial to McKinley. The eyewitnesses were cross-examined about the reliability of their testimony; the holes in their identifications were poked for the jury to hear, and still the jury convicted. If this line of questioning had any impeachment value, it was minimal, particularly given the fact that four witnesses identified McKinley as the shooter; it cannot plausibly be argued that impeaching two of them further (on a relatively collateral issue) would have so undermined the case against McKinley as to create a reasonable probability that he would not have been convicted. Therefore, the argument raised in Claim F2 is not "substantial" enough to merit the application of the *Martinez* exception to procedural default.[9] *See, e.g., Lopez v. Ryan*, 678 F.3d 1131, 1138 (9th Cir. 2012) (ineffective-assistance claim based on "hypothetical speculation" was not "substantial" for purposes of *Martinez*).

---

[8] There does not appear to be any dispute from police reports that at least one officer who *knows* Spanish was at the scene; however, Moreno's testimony was the only evidence that any officer did speak to any witness in Spanish.

[9] For the same reasons, even if the Court were to conclude that *Martinez* excused the procedural default of this claim, the Court would deny the claim on its merits.

<u>b. Cause and Prejudice or Actual Innocence</u>

*Martinez* does not provide cause for reviving any of McKinley's defaulted ineffective-assistance claims (D2, D3, and F1-F3). McKinley also argues that his procedural defaults are excused by other "cause" and prejudice, or, alternatively, by his claim of actual innocence.

Although McKinley purports to argue "cause and prejudice," (*e.g.,* Dkt. # 31 at 17-38; Dkt. # 41 at 3-31) the Court has not located in his hundreds of pages of briefing anything that qualifies. Critically, McKinley does not show that any "external impediments" prevented him from presenting the defaulted arguments in the state court for a full round of review. *Lewis,* 390 F.3d at 1026 ("[C]ause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts."). "Cause" is defined as some "objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Weddington v. Zatacky*, 721 F.3d 456 (7th Cir. 2013) (citation and internal quotation marks omitted). For example, although he submits new exhibits in support of his petition, he does not claim that the evidence first became available after his direct appeal or post-conviction proceedings. Indeed, it is clear from the record and McKinley's argument that both kinds of photographic evidence on which he bases habeas claims (the photo that police showed to his aunt and the photo of McKinley on the day before the shooting) on came to light no later than his trial. Any challenges to the identification procedures the police used were also available from the start. Finally, any arguments relating to the alleged search of McKinley's aunt's apartment were available at least from the time of trial; Ms. Martin testified at the trial that the police had "ransacked" her home and stolen a photograph of McKinley. As McKinley points out, he has now supplemented the record with new affidavits

from Martin and her daughter, Chachauna Toney, but he does not show that these could not have been presented sooner.[10] He therefore fails to show cause for his procedural defaults.

Finally, McKinley argues that he is actually innocent, and therefore his procedural default should be excused in order to avert a fundamental miscarriage of justice. McKinley's argument is multi-pronged, but the core contention is that he has demonstrated that the eyewitnesses misidentified him as the shooter and that he was not involved in the shooting. First, McKinley argues that his conviction rests on "vague, uncertain[], and suggestive cross-racial insufficient identification evidence" and "exculpatory evidence that was wrongly excluded." Reply, Dkt. # 31 at 61. To support his argument about "cross racial misidentification," McKinley submits two short articles describing social science research on the subject, making the point that

---

[10] At multiple points, McKinley states that he was not aware of the factual basis for, and therefore could not have raised, any claim premised on an illegal search and seizure of evidence from Ms. Martin because his trial lawyer "misled" him and concealed the inadequacy of the pretrial investigation, specifically with respect to Ms. Toney's presence in the home and corroboration of Ms. Martin's testimony. But Ms. Martin's trial testimony alone was sufficient to alert McKinley to the Fourth Amendment claim he believes was concealed from him. In any case, McKinley's complaint about being "misled" is simply a restatement of his claim D2, for ineffective assistance of trial counsel based upon his lawyer's failure to adequately investigate the police search of Ms. Martin's home and move to suppress any evidence that flowed from the "stolen" photograph of McKinley they obtained there. When McKinley attempted to bring this claim to the state courts in a successive post-conviction petition, the Illinois courts declared that there was no cause for him having failed to timely raise it in his original post-conviction petition. *See* Ex. N, No. 01-CR-17493, Order Denying Leave to File Successive Petition, (Jan. 11, 2011). The state court's ruling that McKinley lacked cause for the untimely filing is a substantive ruling based on state law that constitutes an adequate and independent state ground for denying the claim; as such, it is not subject to further cause-and-prejudice review by this Court. Moreover, even after the post-conviction trial court denied him leave to file the successive petition, in the subsequent appeal, he dropped the claim about the Martin home. *See People v. McKinley*, 1-11-0513, 2012 WL 6955475, at *2 (Ill. App. Ct. 2012) ("We initially observe that defendant raised eight claims in his successive post-conviction petition, but, on appeal, he focuses solely on his ineffectiveness claim based on counsel's alleged failure to inform him of any plea deals."). McKinley's failure to include in his appeal the ineffective-assistance claim premised on a supposed Fourth Amendment claim, when he had raised it in the proposed successive petition, cannot be the result of having been "misled" about the legal or factual basis for the claim.

eyewitnesses have trouble identifying or describing individuals of a different race than their own—a fact the Seventh Circuit has acknowledged. *See, e.g., Cunningham v. Peters*, 941 F.2d 535, 541 (7th Cir. 1991) (("All eyewitness testimony is problematic, given the frailties of human memory. Identification by members of other races is especially so.") (citing authorities)). The other "exculpatory" items of evidence McKinley refers to are the lineup and photo-array procedures, which he maintains were unreliable; the wedding photograph showing his hair length, which was omitted from his defense at trial; and the photograph of Danny Lopez shown to his aunt.

Finally, McKinley submits his own affidavit with his alibi (Dkt. #14 at 25-27)—which, he contends, he was wrongfully prevented from testifying about at trial. McKinley's affidavit declares that he was staying with his grandmother, miles from the shooting, on the day of Serna-Ibara's murder, and that because as a rule he had to check in with his grandmother every two hours and he was not allowed to leave the house until noon, it was impossible for him to have committed the murder around 2:10 p.m. He says that, in fact, he did "check in" with his grandmother at 2:00 p.m., and that he was out playing basketball with "neighborhood kids" at the time of the shooting.

The evidence McKinley points to does not begin to meet the exacting standard required to excuse a procedural default by means of an actual innocence claim. For an actual innocence claim to open the gateway to the merits of claims that were otherwise procedurally defaulted, the petitioner must show that in light of new evidence, "it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006); *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010)). The claim of actual evidence must be supported with "new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Hardy*, 628 F.3d at 319. In evaluating how a

reasonable juror would evaluate the petitioner's guilt, the Court must "consider all the evidence,

old and new, and based on this total record, make a 'probabilistic determination about what

reasonable, properly instructed jurors would do.'" *Hardy*, 628 F.3d at 319 (quoting *House*, 547

U.S. at 538).

Taking into account all of the evidence that McKinley emphasizes—and even leaving

aside that much of it does not qualify as "new"— the Court cannot conclude that under a holistic

view of the evidence, it is more likely than not that no reasonable jury would find McKinley

guilty. Put more simply, the evidence that McKinley points to in his petition is unlikely to have

made any difference in the outcome of his trial. The Lopez photograph is not exculpatory; the

fact that police officers were looking for more than one person of interest during their

investigation is not probative of McKinley's innocence, and does not impeach any evidence

against McKinley. Moreover, the jury heard testimony that police officers showed McKinley's

aunt the photograph, and that it was not of McKinley; therefore, McKinley had every opportunity

to emphasize to the jury that the police had been looking for someone else. The Court cannot see

how having the photograph in hand would have contributed to McKinley's defense. Likewise,

McKinley had ample opportunity at trial to challenge the way in which the police department

conducted the photo array and lineup that led to McKinley's identification as the shooter, and

McKinley does not challenge his trial attorney's performance on that score. Indeed, one of

McKinley's arguments—that police officers had inappropriate conversation with the witnesses

before showing them the photo array—was a point of emphasis in counsel's closing argument.

As for the photographs of McKinley himself from his mother's wedding, the Court, for the reasons explained with respect to the related ineffective-assistance claim, *see infra* p. 32-33, concludes that McKinley cannot make even the lesser showing of *Strickland* prejudice from the failure to introduce this evidence at trial. *See Schlup*, 513 U.S. at 324. These photographs do not have the impeachment value McKinley supposes, and, moreover, they do nothing to undermine the testimony of two of the four witnesses who identified him and never said anything about his hair. They therefore cannot be said to create a probability of reasonable doubt in the minds of reasonable jurors.

The cross-racial identification argument also does not support an actual-innocence claim. Accepting the premise that cross-racial misidentification is a recognized phenomenon that reduces the reliability of eyewitness identifications, the Court cannot conclude that this evidence would have precluded a reasonable juror from convicting McKinley. Indeed, it appears that McKinley is arguing not that the social science should have been explained to the jury, but that the cross-racial identifications themselves are *per se* unreliable and should not have been used against him. There is no basis for such an argument. It is simply an additional argument against the reliability of eyewitness testimony that was available, but not made, at the trial. McKinley's argument, moreover, fails to consider that it was not one, but four eyewitnesses, who identified him as the shooter.

Finally, a jury may or may not have credited McKinley's alibi. He does not suggest that anyone corroborates it, and it would simply be a matter of his word against the witnesses who placed McKinley at the shooting, gun in hand. *See Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010) (Alibi evidence not sufficient when weighed against evidence of guilt to meet high threshold of actual innocence claim); *Hayes v. Battaglia*, 403 F.3d 935 (7th Cir. 2005) (same).

Moreover, this is not alibi evidence that only recently became available. McKinley claims that his trial attorney was aware of the alibi defense but failed to present it.

Despite Mr. McKinley's thorough presentation of his arguments, he has not established that taking all the old and new evidence together, there is a reasonable probability that no reasonable jurors would have found him guilty. This is not the "rare case" where the central proof connecting the defendant to the crime has been called into question or where new evidence points to a different suspect. *See House*, 547 U.S. at 554. McKinley falls well short of establishing that it is more likely than not that no reasonable juror would have convicted in light of the cited evidence.

For all of these reasons, the claims that McKinley procedurally defaulted (Claims A, D1, D2, E, F1, F2, and F3) may not be considered by this Court.

### B. Fair Presentation and Cognizability

Challenging another set of McKinley's claims, the State argues that McKinley either fails to show any federal constitutional basis for them or, relatedly, failed to alert the state courts to the federal nature of the claim. Failing to provide a federal basis for the claims when presenting them to the state courts is simply another form of procedural default—a failure to "fairly present" the claims. Whether the state courts could glean the federal nature of the claims is a pragmatic rather than a technical inquiry. *See Bocian v. Godinez*, 101 F.3d 465, 470 (7th Cir. 1996). "[F]our factors (derived from a waiver analysis) bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged

a pattern of facts that is well within the mainstream of constitutional litigation." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

Cognizability, on the other hand, refers to whether the petition *in federal court* presents claims that do not implicate the federal constitution. Section 2254 allows a writ to issue to a state prisoner in custody in violation of federal law; therefore, on federal habeas review, the court cannot revisit the state courts' resolution of state-law questions. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (granting certiorari); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Claims that are grounded in state law are not cognizable on federal habeas review.

The State argues that one or both of these problems plague three of McKinley's claims: Claim B (challenging the trial judge's response to jury notes); Claim C (the excessiveness of the sentence); and Claim D3 (trial counsel's failure to question witness Michael Thomas about the shooter's hair length). The Court has already concluded that ground D3 was procedurally defaulted because the state court ruled that it was waived and did not address it on the merits; it will not address the State's further argument that McKinley failed to consistently characterize the argument as a claim under the Sixth Amendment.[11]

In Claim B, McKinley challenges the trial judge's handling of the jury note that stated: "The Jury would like to know the evidence leading to the arrest of Benard McKinley? If possible may we have a copy of the transcript?". The judge interpreted this as two separate questions, and gave two answers. First, he instructed the jurors that "you have all the evidence on that issue; continue to deliberate." Second, he asked "what portion or portions of the transcript do you want?" and provided the transcripts of three witnesses' testimony after the jury answered with

_____

[11] After the appellate court deemed this argument waived, McKinley shifted his focus to overcoming the waiver when he filed the subsequent PLA; had the Illinois Supreme Court chosen to ignore the waiver, it likely would have understood the underlying argument to be an ineffective-assistance claim.

additional notes. McKinley contends that it was an "abuse of discretion" for the judge to treat the jurors' initial questions as separate, because, McKinley contends, the second question was a follow-up question to the first—a request for "the transcript of the evidence that led to Benard McKinley's arrest." Dkt.# 11 at 22. McKinley argues that the judge's answers misled the jury into thinking that the trial transcripts provided to them contained evidence regarding how he came to be arrested.

The State argues that McKinley did not present this argument as a federal constitutional claim when he raised in state court, and that his argument of the issue in this court, despite referring broadly "Supreme Court" and "federal" law, is really a matter of whether the judge abused his discretion under state law in responding to the jury notes. The judge's response to the jury's note was forcefully argued as a basis for a new trial in McKinley's direct appeal. This Court agrees that the Illinois courts were not given the opportunity to address this argument as a matter of federal law. McKinley chiefly argued that the judge misinterpreted the jury's note and that he therefore gave a misleading answer about the state of the evidence. McKinley did not argue that the judge's response had deprived him of any constitutional right. Moreover, none of the factors from *Wilson v. Briley* is present. McKinley relied on state case law that did not apply a constitutional analysis to similar facts;[12] he did not use any particular language that calls to mind any specific constitutional right; and he did not allege a pattern of facts that is "well within

---

[12] McKinley insists a citation to *People v. Pryor*, 537 N.E. 2d 1141, 1145-1146 (Ill. App. Ct. 1989), in his post-conviction brief was sufficient. But *Pryor* did not apply a federal constitutional analysis to similar facts; it addressed the trial court's failure to answer the jury's questions and applied an abuse of discretion analysis. The *Pryor* court did not apply any constitutional analysis, nor did it mention that any constitutional issue had been raised. Nor was there any federal constitutional analysis applied in *People v. Sampson*, 408 N.E. 2d 3, 8 (Ill. App. Ct. 1980) (trial judge answered question about when photographs were taken with version of events offered by prosecution witness); the Appellate Court referred to "right to have the jury determine []facts," but there is nothing that pointed to a federal basis for the court's decision.

the mainstream of constitutional litigation." He argued that the trial judge committed an abuse of discretion, not that his constitutional rights were violated; it is therefore unsurprising that the Illinois Appellate Court did not understand him to be making a constitutional argument. In state court, McKinley did not fairly present his argument as raising any issue of federal law; Claim B therefore is procedurally defaulted.

For the sake of completeness, the Court notes that it does not follow that Claim B is not a cognizable federal claim as presented in this court. In his initial filings, McKinley did not explain how the judge's "abuse of discretion" also violated his federal constitutional rights,[13] which suggested he was primarily continuing his argument that the trial court violated state law. *See Martin v. Evans*, 384 F.3d 848, 855 (7th Cir. 2004) (holding that petitioner's claim that trial judge abused his discretion in denying continuance was not cognizable claim in federal habeas proceeding). But, although he does not explain the precise contours of his constitutional claim, McKinley states that Claim B of his habeas petition rests on the "14th Amendment of the U.S. Constitution." Dkt. # 11 at 21. And the Fourteenth Amendment does, at its core, provide a due process right to a fundamentally fair trial. *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). The Seventh Circuit has cautioned that it is important to "draw a distinction between *claims* that are cognizable in habeas proceedings and *errors* that are cognizable." *Id*. A *claim* that the petitioner was deprived of due process is cognizable; however, it might be that the cited errors

---

[13] For example, McKinley does not argue that the judge handled the jury question in a way that violated his rights to counsel and to be present at every stage of his trial. *See generally Rogers v. United States,* 422 U.S. 35, 39-40 (1975); *United States v. Rodriguez*, 67 F.3d 1312, 1316 (7th Cir. 1995) ("Discussions between court and counsel regarding jury inquiries must take place on the record in the defendant's presence. . . . The accused has the right under the Sixth Amendment to be present at all stages of his trial, including the jury deliberations and communications to the jury."). "A criminal defendant's right to be present at every stage of trial is rooted to a large extent in the Confrontation Clause of the Sixth Amendment . . . and is protected to some extent by the due process clause of the Fifth and (in state cases) the Fourteenth Amendment." *United States v. Neff*, 10 F.3d 1321, 1323 (7th Cir. 1993).

were only "errors of state law," which lie beyond the power of the federal habeas court to address, rather than errors so grave as to have deprived the petitioner of due process. *Id*. In *Perruquet*, the Seventh Circuit held that this distinction could not be made on the face of the habeas petition and required a closer inspection of the underlying facts. *Id*. Moreover, in his replies, McKinley invokes his Sixth Amendment right to trial by jury, contending that the trial judge's response amounted to impermissible judicial fact-finding. See Dkt. # 31 at 21-22.

In keeping with these principles, and the leniency with which *pro se* pleadings must be afforded, the Court concludes that, contrary to the State's argument, there is a cognizable habeas claim as to Claim B. But, as already explained, this due-process claim was never presented to the state courts, and it is procedurally defaulted for that reason. The Court rejects McKinley's argument that his "abuse of discretion" arguments in state court were sufficient to fairly present the Sixth Amendment claim he now wishes to raise. As in *Perruquet*, if this Court were to address the claim, it would have to do so *de novo*, as no state court was given the opportunity to review it first; this plenary review is inconsistent with AEDPA's deferential standards and also contrary to "comity and federalism principles." *See id*. at 518.[14]

Claim C, which argues that McKinley's sentence, two consecutive 50-year terms, is excessive, is the next claim the State argues was not fairly presented and is not a cognizable federal claim. Again, McKinley cites "the 14th Amendment" as the basis of his claim, without further explaining the nature of the constitutional violation. He argues that it was unreasonable for the trial judge to consider as an aggravating factor that McKinley committed the murder while completing a juvenile diversion program for an earlier arrest (for drug possession) and for

---

[14] Also for the sake of completeness, the Court notes that were it to reach the merits, this claim would fail in any event as the Court concurs that the trial judge's interpretation of the jury's note is far more tenable than is McKinley's. The judge did not misconstrue the note, much less deny McKinley a fair trial in the process.

concluding based on that criminal history that McKinley was at risk for recidivism. McKinley further contends that the trial court wrongly failed to consider his "demeanor and moral character" and various mitigating facts, such as his completion of parenting and behavior management classes and earning his G.E.D. Finally, McKinley argues that his age and likelihood of rehabilitation were not sufficiently accounted for by his sentence.

It is possible to make a federal constitutional argument based on the excessiveness of a prison sentence, but here, McKinley's arguments were not of that nature as presented to the state courts. His arguments, as well as his refrain that the trial court "abused its discretion" implicate the trial court's weighing of various sentencing factors; he presents no theory under which the sentence imposed violated the federal Constitution. *See People v. Alexander*, 940 N.E.2d 1062, 1066 (Ill. 2010) (explaining the discretionary nature of sentencing under Illinois law and factors for court to consider). "An error in . . . the application of state sentencing rules [] does not present a cognizable claim for federal habeas relief." *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Nothing in the nature of his arguments invokes the constitutional prohibition (rooted in the Eighth Amendment) on excessive or disproportionate sentences. *See, e.g., Graham v. Florida*, 560 U.S. 48, 60 (2010) (explaining proportionality principle embodied in Eighth Amendment's ban on cruel and unusual punishments). In the state courts, McKinley primarily rehashed his arguments for a lower sentence, and he therefore did not present any federal claim based on the length of his sentence. Accordingly, the claim was not fairly presented to the state courts.

In this Court, in his reply brief, McKinley invokes the proportionality principle of the Eighth Amendment, as well as due process, and states these principles were "obvious" in his state-court filings although "he only used state cases as legal principles." See Dkt. # 31 at 25.

Even if this Court took a more expansive view of McKinley's arguments as presenting a constitutional claim in state court, however, it would not find for McKinley on the merits. McKinley's strongest argument—and the one he presses in most detail in this Court— is that the trial court failed to account sufficiently for his youth at the time of the murder. The Illinois Appellate Court reviewed his sentencing challenge on direct appeal and concluded that the trial court adequately took age into account among other factors and that the sentence reflected the seriousness of the crime and aggravating factors such as the lack of provocation and the probable gang-related nature of the shooting.

As McKinley points out, the Supreme Court has consistently held that juveniles have diminished culpability and greater prospects for reform, and therefore are different from adults for purposes of sentencing. *E.g., Graham v. Florida*, 560 U.S. 48, 68-69 (2010); *Roper v. Simmons*, 543 U.S. 551, 569-71 (2005). And in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), the Supreme Court held that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments. Arguably, McKinley's consecutive 50-year sentences could be a *de facto* sentence of life imprisonment. But the sentence was not imposed according a scheme that runs afoul of *Miller*. This was not a mandatory sentence imposed without judicial discretion, and the possibility of parole was not extinguished. Whether McKinley's sentence should have been lower due to his age is not for this Court to say; the Illinois courts held that the sentence was not excessive, and that conclusion is not in conflict with the federal Constitution.

## C.     Ineffective Assistance of Counsel

The only ground for relief that this Court can address on the merits is D1: the alleged ineffective assistance of McKinley's trial counsel, Gregg L. Smith, in failing to impeach the

eyewitnesses on their identification of McKinley as the shooter by entering into evidence the photographs of McKinley at his mother's wedding that would prove he did not cut his hair between the shooting and the lineup.

As the Illinois court recognized, the ineffective-assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that counsel's performance was objectively unreasonable and prejudiced the client prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. Satisfying the two-part *Strickland* standard is difficult, and "establishing on habeas review that a state court unreasonably applied *Strickland* under § 2254(d) is all the more difficult." *Morgan v. Hardy*, 662 F.3d 790 (7th Cir. 2011); *see McNary*, 708 F.3d at 914 (*Strickland* and AEDPA combine to form "doubly deferential" standard of review; *Steffes v. Pollard*, 663 F.3d 276, 282 (7th Cir. 2011) (giving deference under AEDPA to state court's prejudice determination under *Strickland*). Relief should be denied as long as the state court "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006).

The last state court to review the petitioner's claim that his trial counsel was the Illinois Appellate Court, on appeal from the denial of post-conviction relief. The court resolved the claim on *Strickland*'s prejudice prong, concluding that the failure to present the photograph did not alter the outcome of the trial. As support, the court cited the strong eyewitness identifications of McKinley as the shooter in the aftermath of the murder and at the trial; it further noted that only two of the witnesses had even commented on the length of the shooter's hair, meaning that, at

most, the photograph could have impeachment value to only two of the four witnesses who pegged McKinley as the shooter.

The Court finds no fault with the Illinois Appellate Court's conclusion that McKinley was not prejudiced within the meaning of *Strickland*. That court rightly acknowledged that McKinley overstates the impeachment value of the photograph by suggesting that all of the eyewitnesses testified at trial, or had made statements to the police during the investigation, regarding the length of the shooter's hair. The record does not bear out that argument.

Furthermore, the Illinois Appellate Court rightly considered the balance of the evidence against McKinley in concluding that the omission of the photograph was not prejudicial under Strickland. "The materiality of omitted evidence helpful to a defendant 'must be evaluated in the context of the entire record.'" *Woolley v. Rednour*, 702 F.3d 411, 426 (7th Cir. 2012) (citing *United States v. Agurs*, 427 U.S. 97, 112 (1976)). The case against McKinley, though not overwhelming given the absence of physical evidence, was nevertheless strong. The victim's three friends had the opportunity to view the shooter during the initial confrontation on the way to store, and during the second confrontation that led to the shooting. They all picked McKinley out of a photo array and a lineup, and they all identified him as the shooter at his trial.[15] Michael Thomas, who testified that he saw McKinley flee from the shooting with gun in hand, had prior familiarity with McKinley, and he, too, picked McKinley out of lineup and identified him at trial as the shooter. At trial the witnesses were subjected to robust cross-examination regarding the accuracy and consistency of their statements regarding the identity of the shooter. The state appellate court did not unreasonably apply federal law when it concluded that that, in light of the evidence as a whole, the photograph with modest impeachment value as to two of the witnesses

---

[15] The odds of four witnesses randomly selecting the same person out of a fair six-person photo array are 6 in 1296 ($6^4$), or .46% (less than one half of one percent).

would not have been a difference maker. The Seventh Circuit, while acknowledging that eyewitness testimony is not "always reliable," has found such evidence "substantial" where, as here, there were multiple eyewitnesses with more than a fleeting opportunity to view the crime. *See Morales v. Johnson*, 659 F.3d 588, 600-602 (7th Cir. 2011).

McKinley's burden was not merely to show that the omission of the evidence "had some conceivable effect on the outcome of the proceeding" but to demonstrate a "reasonable probability"—"a probability sufficient to undermine confidence in the outcome"— that the result of the trial would have been different. *See Harrington v. Richter*, 131 S. Ct. 770, 787-88 (2011) (internal quotation marks and citations omitted). Because the Illinois Appellate Court's resolution of McKinley's ineffective assistance of counsel claim is consistent with the constitutional standard of *Strickland*, he is not entitled to a writ of habeas corpus based upon his trial counsel's failure to admit photographic evidence of the length of McKinley's hair the day before the shooting.

###       D.       Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner who wishes to appeal a district court's denial of his habeas petition must first obtain a certificate of appealability. *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir.2009). A certificate of appealability is warranted only if the petitioner can make a substantial showing of the denial of a constitutional right. *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Evans v. Circuit Court of Cook County*, 569 F.3d 665, 667 (7th Cir. 2009). The standard

is met if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). And in cases where a district court denies a habeas claim on procedural grounds—which this Court did as to the bulk of McKinley's claims—the certificate should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 485.

The Court concludes that McKinley has not made a substantial showing of the denial of a constitutional right, nor is there cause to conclude that reasonable jurists would differ on whether his claims are defaulted under 28 U.S.C. § 2254(b) or cognizable under 28 U.S.C. § 2254(i). Thus, the Court declines to certify any issues for appeal.

## E.    Outstanding Motions

Two final loose ends remains to be tied: McKinley's motions for appointment of counsel and for production of documents. As is likely evident from the Court's opinion, they are denied.

### 1.    Appointment of Counsel

There is no right to appointment of counsel in a federal habeas case. *See Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) (explaining that "due process does not require appointment of counsel for indigent prisoners pursuing state postconviction remedies or federal habeas relief."). An attorney may be appointed if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *Johnson v. Chandler*, 487 F.3d 1037, 1038 (7th Cir. 2007) *see* 28 U.S.C. § 1915(e)(1). In determining in its discretion whether requesting an attorney for the petitioner is

warranted, the Court must ask: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *See Pruitt,* 503 F.3d at 655.

McKinley's motion reflects that he made a reasonable attempt to obtain counsel on his own under circumstances that make that endeavor challenging. As to the second question, in light of the difficulty of the case, McKinley was competent to represent himself. By the time he requested an attorney, McKinley had shown already himself quite capable of proceeding without one; that has been borne out further in the briefs filed after the motion. In his petitions, motions, and briefs, McKinley articulated his claims and their basis in a clear and understandable fashion and appeared informed about court procedures. He cited applicable case law, including recent Supreme Court precedent, appropriately. And he made responsive, fitting arguments in response to the State. His presentation far exceeded what is typical for a *pro se* habeas petitioner. Accordingly, appointing counsel was not warranted.

2.      Motion for Production of Documents

McKinley moved to compel the State to provide him with various materials he argued would support his habeas claim. McKinley first requested access to the nine photographs shown to eyewitnesses, out of which they each identified McKinley, as well as photographs of the in-person lineup in which McKinley again was identified. All of these photographs were exhibits at the trial. McKinley argues that these are necessary to support his claim that the photo array and lineup were unduly suggestive (Claim E). However, the photographs would go to the merits of McKinley's claim, and the Court has already concluded that it cannot consider the claim due to procedural default. McKinley presented the argument to the state court on post-conviction

review, but never carried it further. And the default was not excused by cause and prejudice or a compelling claim of actual innocence.

McKinley also requests the photograph of Danny Lopez that police showed to his aunt, Alisa Martin, during the investigation. In claim F1, McKinley argues that his trial attorney, despite moving a mistrial based upon the prosecutors' failure to disclose the photograph before trial, was ineffective for not obtaining a continuance of the trial to investigate the supposed *Brady* violation and use the photo to exculpate McKinley. In claim D2, McKinley states that his aunt's home was illegally searched and that evidence (namely, a photograph of McKinley) was illegally seized from it. Both claims are procedurally defaulted; therefore, there is no reason for the Court to compel the disclosure of evidence that would go to the merits of the claims.

McKinley's last request was for a portion of the trial transcript (already part of the state court record); the State provided it in response to his motion.

\* \* \*

The petitions for a writ of habeas corpus are denied, as are the petitioner's motions for appointment of counsel and production of documents. No certificate of appealability shall issue.

Date: March 31, 2014

John J. Tharp, Jr.
United States District Judge